FREDERIC SPOFFORD, petitioner for certiorari, *vs.* BUCKSPORT & BANGOR RAILROAD COMPANY.

Hancock, 1875.—August 4, 1876.

*Railroad. Railroad Commissioners. Certiorari.*

Under R. S., c. 51, §§ 2 and 3, the purposes for which a railroad corporation has the power to take and hold lands as for public uses, for the location, construction and convenient use of its railroad, are for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses.

The statute gives the railroad commissioners jurisdiction only in case of disagreement between the parties as to the necessity and extent of the real estate to be taken for side-tracks, depots, wood sheds, repair shops and car, engine and freight houses; and they have power only to determine the necessity and extent of the real estate to be taken for these purposes, having in view the reasonable accommodation of the traffic and appropriate business of the corporation.

The jurisdiction of the railroad commissioners being given by statute, and the petition presented to them being the foundation of their action, they obtain jurisdiction only when the petition presents a case within the provisions of the statute.

To give them jurisdiction the petition should contain a description of the estate which the corporation claims to take, naming the persons interested therein, with averments that the corporation claims to take it for some one or more of the purposes specified in the statute and that the parties do not agree as to the necessity and extent of the estate, described, to be taken for the purpose or purposes named. The petition to the railroad commissioners in this case, not containing these averments either in form or substance; .held,·not sufficient to give them jurisdiction.

The railroad commissioners, in their adjudication, adjudged and determined that so much of said real estate, as is first described in their return, "is necessary for the use of said Bucksport and Bangor railroad company for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses, and for the reasonable accommodation of the traffic and appropriate business of said corporation." *Held,* that they exceeded their powers under the statute; that they had no power to adjudge the estate necessary, and condemn it, for tracks as distinguished from side tracks, nor for the general uses of the corporation in addition to the uses specified in the statute.

The land which the corporation claimed to take for a gravel pit was described, in its petition to the railroad commissioners, as comprised within a space or limit of fifteen rods square; the land condemned by the commissioners for that purpose was not comprised within that space or limit. *Held,* that they had no power to condemn land not described in the petition; that in so doing they exceeded their jurisdiction.

Where, in a petition for certiorari, it appeared that a substantial wrong had been done to the petitioner, that his estate had been taken by the respondents without a compliance with the requirements of law, and where the case as presented, showed no such laches on the part of the petitioner as to deprive him of his remedy; *held,* that the petition being addressed to the discretion of the court, to be exercised in accordance with the established rules of law, the writ of certiorari should be issued as prayed for.

On report.

Petition for certiorari as follows:

"Frederic Spofford, of Bucksport, in the county of Hancock and state of Maine, respectfully represents that the railroad commissioners of said state, under and by virtue of a written petition to them addressed by the Bucksport and Bangor railroad company, did undertake to set out, and did declare and determine, that a large tract of land owned and possessed by petitioner, consisting of eighteen acres or thereabouts, partly consisting of flats below high water mark, and partly of upland in said Bucksport, was necessary for the accommodation of said railroad, said parcel including a large and valuable wharf; and said railroad commissioners did act, and attempt to adjudge, in the premises, so as to condemn for the use of said railroad, and take from petitioner, this large tract of land, all which appears from the record of said petition and the doings of the said commissioners thereon, made by said commissioners, and in court to be produced or a copy thereof, and hereby made a part of this petition as if fully set forth herein.

And that said railroad commissioners had no lawful right or authority or jurisdiction in the premises, to determine and adjudge in the premises as they did, or attempted to do, and to deprive petitioner of his land, or the possession thereof, or use of the same, and that their proceedings were wholly illegal, insufficient, and without jurisdiction, and void, and ought to be quashed by due process of law, and for the reasons as are hereunto annexed and made a part of this petition.

Your petitioner prays this honorable court, to issue its writ of certiorari, directing said railroad commissioners to bring up and certify their said proceedings in full, including said petition, and their acts under it, said proceedings having taken place, and the records thereof, in the months of September, October and December, in the year of our Lord one thousand eight hundred and seventy-three, to the end that the same may be quashed and declared void by this honorable court, and for all suitable orders, decrees and judgments as may be necessary to fully quash and render nugatory and void, the proceedings and determinations and acts of said railroad commissioners, in the premises aforesaid. Dated March 10, 1875.    (Signed,)    *Frederic Spofford.*"

The following is the petition of the respondents to the railroad commissioners:

Petition of B. & B. R. R. Co., to the Railroad Commissioners. *To the honorable board of railroad commissioners of the state of Maine.*

"Respectfully represent the Bucksport and Bangor railroad company, a corporation duly established by law, that said corporation, and Frederic Spofford of Bucksport in the county of Hancock do not agree as to the necessity and extent of the real estate to be taken for side tracks and buildings for said road; and in order to determine the same, said railroad company request you, as provided in section three, chapter fifty-one of the revised statutes, to examine and determine how much, if any, of the real estate of Frederic Spofford, who is alone interested therein, hereinafter described, is necessary for the reasonable accommodation of the traffic and appropriate business of the corporation, to wit: beginning at the north-westerly corner of land of the Sherman steel com-

pany; thence, running north-easterly by the road leading from the county road, to the steel works, to said county road; thence, by the county road south-easterly, to the Kenny Snow lot, supposed to be owned by Mr. Ball; thence, southerly, easterly and northerly round said lot, to said county road; thence, south-easterly by said county road, to land of A. Colby; thence, by said Colby's land southerly, to the river; thence, westerly by the river, to the north-easterly corner of the Sherman steel company lot; and thence westerly or north-westerly by said lot, to the place of beginning.

Also, one other parcel in said Bucksport village, and which is situated between said county road and Penobscot river, and between the ferry way on the west, and land of Stephen Bennett on the east.

Said railroad company further represent that a certain gravel pit, owned by said Frederic Spofford, and situated easterly of and adjoining their railroad track near where it crosses the county road near Smelt brook, so called, in Bucksport village, and northerly of said county road, and comprised within a space or limit of fifteen rods square, is necessary for the construction and repair of its road; the parties not agreeing in regard thereto, said company, therefore, in order that it may take and hold the same, request you to view the same, and take such action in regard thereto as the law provides.

Said company further represent; that, in order to the convenient working of said road, it is necessary that it should have access to, and the certain use of, a certain spring of water situated, on land of said Spofford, in the rear of William Beazley's land, near said Smelt brook, in said Bucksport. Said company therefore request you to view the same, and assign to them such portion of said Spofford's land, lying between said railroad track and said spring, and so as to include said spring, as you may adjudge to be necessary for said road.

Dated at Bucksport, this 22d day of September, A. D. 1873.

By order of the directors of the Bucksport and Bangor railroad company. Sewall B. Swazey, president."

The railroad commissioners ordered fourteen days personal notice on Frederic Spofford, and the service was proved.

The commissioners made the following report :

"Whereas, on the twenty-second day of September, A. D. 1873, the Bucksport & Bangor railroad company—a railroad corporation established by the laws of the state of Maine—made their application in writing to us, the undersigned railroad commissioners of said state, alleging in said application, that certain real estate, situate in Bucksport in the county of Hancock and state aforesaid, is necessary for the tracks, side tracks, depots, woodsheds, repair shops and car, engine and freight houses for said corporation, and setting forth therein a definite description of said real estate, and the name of Frederic Spofford of said Bucksport, as the owner and only party interested therein, and asking us, (as provided in section three, chapter fifty-one of the revised statutes,) to examine and determine how much, if any, of the said real estate, in said application described, is necessary for the reasonable accommodation of the traffic and appropriate business of said corporation, which application is hereto annexed, and made a part of this our certificate ; and said Bucksport and Bangor railroad company, in their said application in writing, further represented to us, that a certain gravel pit is situate in said Bucksport, and owned by said Spofford ; and in said application said company set forth a definite description of said gravel pit, and alleged that it is necessary for the construction and repair of their road ; and asked us, the parties not agreeing in regard thereto, to view the same, and take such action in regard thereto as the law provides, in order to the company's taking and holding the same, for the purposes for which they averred it to be necessary to them ; all of which appears in said application aforesaid, and is adopted also as a part of this, our certificate, with said application.

And whereas, on the twenty-fifth day of September, A. D. 1873, we made our order, directing due notice of the time and place of hearing on said application to be given to said Frederic Spofford, the only person interested therein, or in said real estate, or in said gravel pit, which order, hereto annexed, is made part of this, our certificate.

Now, we hereby certify that on the fifteenth day of October, A. D. 1873, we met at the hotel, called the 'Robinson House,' in

said town of Bucksport, at ten o'clock, A. M., being the same time and place appointed in our said order. Said 'Robinson House' is near the premises named in said application; and at said time and place, so appointed by us, the president of the road, Sewall B. Swazey, esq., in behalf of said company, and Frederic Spofford, esq., for himself, appeared before us, and it was then proved to us that notice had been given as ordered, and in accordance with the statute in such case provided, and more than fourteen days before said fifteenth October, A. D. 1873. And at the same time, at said hearing, it further appeared, and was shown to us that the said railroad company and said Spofford did not then agree, and had not before agreed as to the necessity of said real estate, or of said gravel pit, being taken by said company for the purposes aforesaid, or as to the extent of either, necessary to be taken therefor. Said Spofford had been requested by said company to so agree, before their said application to us. And it further appeared by the evidence before us, that said Spofford did not then consent, and had at no time before consented, that said corporation might take and hold said real estate and said gravel pit for the purpose aforesaid, and did not then agree, and had not before agreed, upon the necessity and extent thereof, although applied to for that object by the said company before the said company made its application aforesaid to us.

We, therefore, went upon the real estate and gravel pit aforesaid and viewed them and all the several premises in Bucksport named in said application, so far as was necessary to a just decision of all matters prayed for in said application of said company; and at said time and place aforesaid when and where our order of notice was made returnable as aforesaid, we heard the several proofs, allegations and statements of the said railroad company, and of Frederic Spofford, the owner of and the only person interested in said premises prayed for and in the matters named in said application. And we do now, after such hearing and view of the premises, adjudge and determine that so much of said real estate, as is hereinafter by us first described, is necessary for the use of the said Bucksport and Bangor railroad company, for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight

houses, and for the reasonable accommodation of the traffic and appropriate business of said corporation; and the description and bounds of said real estate so found by us to be necessary for said corporation, for said purposes above named, are as follows, to wit: Beginning in the village of Bucksport, at a point where the dividing line between the property of Frederick Spofford and that of A. Colby intersects the westerly side line of Main street; thence, north-westerly along said westerly line of Main street, about fifteen hundred feet, to the southerly side line of a street leading to the steel works, so called, excepting and passing the line around the Kenney Snow lot, occupied by M. Ball, on said Main street; thence, southwesterly along the said southerly side line of the street leading to the steel works, two hundred and seventy feet, or to a point which shall be two hundred and fifty feet north-westerly of, and measured on a line at right angles to the centre line of the B. & B. Ry.; thence, south-westerly on a line curving to the left or easterly parallel to and two hundred and fifty feet distant from the said centre line of the B. & B. Ry., six hundred feet to a point on the flats a few feet south of the channel of Smelt brook; thence, westerly on a line parallel to the wharf now existing upon this enclosed area on a direct line laid on such a course that the point where in four hundred and forty-seven feet from the last named point near the Smelt brook it will intersect the line of low water (as marked upon a plan furnished by the chief engineer of the said Bucksport and Bangor railroad company and hereto attached,) at a point four hundred and fifty feet from the east side of the wharf of the before mentioned steel works, and eight hundred and fifty feet from the before named division line between said Frederic Spofford and the said A. Colby, measuring each of the two last named distances along said line of low water; thence, extending the last described direct line from near Smelt brook, through its point of intersection with said line of low water, to the channel of the Penobscot river, and in like manner extending the said division line between the said Frederic Spofford and the said A. Colby, from the described point of beginning on the said westerly side line of Main street, to the said channel of Penobscot river, for a south easterly bound, and the said channel of the

westerly bound, with the whole area contained within the de-
scribed limits, inclusive of the said wharf, but exclusive of the said
land occupied by M. Ball, on said Main street, and the building
owned by said Frederic Spofford, and situated on said Main street,
just south of the road crossing of the said Bucksport and Bangor
railroad, and containing of upland, about 5 3-4 acres, and of flats
about 10 1-4 acres more or less. And we annex hereto a plan
of the water front of Bucksport, furnished us by Mr. Spofford,
engineer of said B. & B. railroad, and marked 'B,' and which con-
tains within the heavy black lines, that we have placed thereon,
the area awarded by us to the road.

And at said hearing it was shown to us further, that said parties
did not then agree, and had not at any time before agreed, as to
the necessity and extent of the premises described in said appli-
cation, in the third paragraph thereof, to be taken for a gravel pit
by said corporation. And it was made further to appear to us,
that the said Spofford did not then consent, and had not before
consented, that said premises or any part thereof, might be taken
by said company for the purposes by them alleged as aforesaid to
be necessary, though he had been requested so to do by said com-
pany before their said application was made to us therefor. Where-
fore, after viewing the premises and hearing the parties as afore-
said, we do now adjudge and determine that so much of the gravel
pit prayed for in said application, as is hereinafter described by us
is necessary for the construction and repair of said company's
railroad. The bounds of said pit, so found by us to be necessary
to said corporation for said purposes above named, are as follows:

Beginning at a point upon the northerly line of the county
road, 103 feet (6 rods, 6 links) easterly upon said northerly line
of county road from its intersection with the right-of-way of the
Bucksport and Bangor railroad; thence, at a right angle to said
county road upon a course bearing N. 54 deg. E., magnetic, a dis-
tance of 165 feet (10 rods) ; thence, by a course bearing N. 30
sec. W., a distance of 372 feet (22 rods, 13½ links), to a point upon
the easterly line of the aforesaid right-of-way ; thence, by easterly
line of right-of-way, to the first mentioned point, containing 9-10
of an acre, or 144 rods. We annex hereto, as tending to explain

the above description, a skeleton plan of the premises embracing said pit, and by us awarded said railroad. And we fix three years as a reasonable time for said company to take and remove the gravel and other materials from said pit for their railroad. In case said company shall take gravel or other material from below the level of the little brook that passes along by said pit, then said company shall re-fill said pit with earth, so that it shall be restored to the owners with its surface about one foot above the average level of said little stream, that it may be nearly on· a level with the present subgrade of the railroad ; and they shall leave the same in the best condition practicable for the owner, consistent with the use for which it is taken in the meantime by the road ; said pit shall at once be restored to the owner when the gravel is all removed therefrom, though the three years may not then have expired. Plan marked 'A.'

And we hereby make this our determination, adjudication, and this certificate of our adjudication on the matters aforesaid, according to the laws of this state.

In witness whereof, we said railroad commissioners, in our said capacity, have hereunto set our hands this sixth day of December, A. D. 1873.

> S. H. Blake,     ⎫ Railroad Commis-
> A. W. Wildes,    ⎬ sioners of Maine."
> John F. Anderson, ⎭

On the foregoing report was the following return :

"HANCOCK, ss. Clerk's office, S. J. Court, Ellsworth, Oct. 13, 1874. Received and filed.

Attest,                                    H. B. Saunders, Clerk.

The petitioner presented with his petition the following statement :

"*Reasons for quashing and declaring void the proceedings in the case of Bucksport & Bangor Railroad* v. *Frederic Spofford.*

I. Because the allegations, in the petition of said railroad to the railroad commissioners, are not sufficient to give jurisdiction or authority to said commissioners to make the adjudications, determinations, appropriations and taking of land contained in

their record herewith submitted; and because they had no legal authority or jurisdiction in the premises.

II. Because it is not alleged in said petition that said railroad corporation had taken any land for necessary tracks, side tracks, depots, wood sheds, repair shops, car, engine and freight houses, or for any one or more of such tracks or buildings.

III. Because said petition does not allege that any land was necessary or required or desired by said corporation for said tracks or buildings.

IV. Because said petition does not describe any specific lot or parcel of land, and declare that the same parcel so described is necessary or required or taken or desired by said corporation for a track, side track, or for a depot or wood shed or repair shop, or for car, engine or freight house, or for one or more of each, or for any or all of such tracks or buildings.

V. Because said petition only describes a large tract of land, as owned by Frederic Spofford, and only asks and prays the railroad commissioners to examine and determine how much, if any, of said large lot of land, is necessary for the reasonable accommodation of the traffic and appropriate business of the corporation, without any reference to any particular or specific purposes or object described in the statute, except the general allegation above set forth.

VI. Because said petition only alleges that the said corporation and said Spofford do not agree as to the necessity and extent of the real estate to be taken for side tracks and buildings for said road; but does not state concerning whose or what real estate, or where situated, the difference of opinion arises, and does not set out or describe the side tracks or buildings, and does not allege any disagreement as to any particular lot or lots, or parcel or parcels of land, and as to the necessity and extent of the land for side tracks and buildings, and does not contain any allegation that said Spofford and said railroad do not or did not agree, as to the necessity and extent of the real estate to be taken for the reasonable accommodation of the traffic and appropriate business of the corporation.

VII. Because the said petition does not contain sufficient alle-

gations to sustain or authorize the only prayer therein, viz. : that said commissioners should examine and determine how much, if any, of the real estate of said Frederic Spofford thereinafter described, is necessary for the reasonable accommodation of the traffic and appropriate business of the corporation ; and because said commissioners, under said petition and the statute, had no legal right or authority to set out or condemn any of said land for such general purposes of the corporation, without any determination as to the necessity and extent of the real estate to be taken for said side tracks and buildings.

VIII. Because said petition describes and asks for the condemnation for the use of said corporation, of land and flats below high water mark, and including a large and valuable wharf on such flats, which land and flats are not by law liable to be so taken for the use of a railroad.

IX. Because the petition does not set forth the taking of the gravel pit for the construction and repairs of the road; and the railroad commissioners had, under said petition, no jurisdiction or legal authority or right to condemn any of said parcel to the use of the corporation.

X. Because in these and other particulars, the said petition is informal and insufficient to give jurisdiction to said railroad commissioners in the premises, or to authorize and empower them to set out and determine as they attempted, as appears by their record, to determine that the land of the said Spofford, or any of it, was or could be necessary for the use of said corporation."

"*Objections to the record of the proceedings of the railroad commissioners and their doings.*

I. Because the said commissioners' jurisdiction in the premises rests entirely upon the petition, and could not be created or extended by any re-assertions or assumptions or declarations not contained in the petition ; especially as the said petition is distinctly referred to and made a part of the record of said commissioners, and said petition as before shown gives no jurisdiction.

II. Because said railroad commissioners were not authorized and had no legal authority to determine generally that a parcel of the said land was necessary for the reasonable accommodation

of the traffic and appropriate business of the said corporation, their authority being limited to the determination of how much, if any, of the land specifically described in the petition, is necessary for such side tracks, depots, wood sheds, repair shops and car, engine, and freight houses, as are specified and individually named and designated with the land deemed necessary for each ; the commissioners, in determining the matter as to the necessity and extent of the land to be taken for such tracks and buildings, are to regard the requirements of said road, having in mind what may be necessary for such tracks and buildings, for the reasonable accommodation of the traffic and appropriate business of the corporation.

III. Because it does not appear that due and legal notice had been given of the pendency and of the time and place of hearing on said petition.

IV. Because said commissioners, under the petition and the law, had no authority to determine and adjudge, that one large tract of flats and upland, containing seventeen or eighteen acres, was necessary for the use of said railroad for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses, without designation otherwise as to the land required for each of such specified tracks and buildings ; and because said commissioners had no authority to determine that any land was necessary for tracks ; and because no allegation or request was in the petition for land for such main track or side track or buildings.

V. Because said commissioners had no legal power to determine that in addition to land necessary for side tracks and buildings, other and more land might and should be taken and held by said corporation for the reasonable accommodation of the traffic and appropriate business of said corporation ; and it is evident from the large extent described as taken and condemned by the said commissioners for the use of said road, that a large part of it must have been taken and condemned for the general purposes last described, and not for side tracks and buildings ; and because no such disagreement between said Spofford and said corporation is alleged as would give jurisdiction to said railroad commissioners to condemn and set off, for the use of said corporation, land for general purposes.

VI. Because, under said petition, the said commissioners had no jurisdiction or authority to set off and condemn, to the use of said corporation, the lot described for a gravel pit for repairs, it not appearing that said corporation had taken it for that purpose; and because the said commissioners had no authority to determine as to the extent and necessity of real estate required or desired for construction or repairs, but only as to land for side tracks and buildings, after a disagreement as to the extent of land required for such side tracks and buildings.

VII. Because said railroad commissioners had no legal right to condemn and set off, for the use of said corporation, any land below high water mark, and particularly the wharf of your petitioner.

VIII. And, finally and generally, that the said proceedings, determinations and judgments of the said commissioners, as appears in said record of said petition and their doings thereafter, were made without legal jurisdiction, right or authority, either under said petition or by law or the constitution, and are void and of no effect and should be quashed.

(Signed,)                    *Frederic Spofford.*"

Upon the foregoing, the full court were to determine whether the writ prayed for should be granted or not, and make such orders and decrees as might be suitable in the premises.

*E. Kent & H. D. Hadlock,* for the petitioner.

*E. Hale & L. A. Emery,* for the respondents.

LIBBEY, J.  This is a petition for a writ of certiorari to quash the proceedings of the railroad commissioners in condemning a tract of land, owned by the petitioner, situated in Bucksport, to the use of the Bucksport & Bangor railroad company.

The respondent, the railroad company, claims the right to take the land as for public uses by virtue of R. S., c. 51, §§ 2 and 3. Being unable to agree with the petitioner as to the necessity and extent of the real estate to be taken, it applied to the railroad commissioners under section three of that statute by petition, and they took jurisdiction and proceeded to act in the premises, and condemned portions of the lands described in the petition which are specifically described in their return.

The question for our determination is, whether these proceedings are sufficient in law to sustain the taking of this land.

The case involves the true construction of the statute before cited. For what uses may a railroad corporation take and hold land by virtue of that statute? Upon this question the parties are at issue. The petitioner claims that it can be taken only for the uses specifically enumerated in § 2; the respondent claims that it may be taken for any use "necessary for the reasonable accommodation of the traffic and appropriate business of the corporation."

The constitutional power of the legislature to authorize the taking of lands for the construction and operation of railroads is not questioned. It rests upon the proposition, now well established, that railroads are public highways, the great thoroughfares for public travel and commerce. But, in the exercise of the right of eminent domain, a grant by the legislature to a corporation to take private property as for public uses, being in derogation of the common law right of the citizen to hold and enjoy his property, is to be construed strictly; and, to justify its taking, it must be shown that all the provisions of the statute in that respect have been fully complied with. This rule of construction is so well settled as to need no citation of authorities.

Another rule of construction, applicable to this statute, is that in all grants, made by the government to individuals, of rights, privileges and franchises, the words are to be taken most strongly against the grantee, contrary to the rule applicable to a grant from one individual to another.

Another rule of construction is that in construing a statute all its parts are to be considered and such a construction adopted as will give force and effect to all its clauses, unless they are clearly repugnant to each other.

"But after all," says Shaw, C. J., in *Cleaveland* v. *Norton*, 6 Cush. 380, "the best ground of exposition is, to take the entire provisions of the act, and ascertain, if possible, what the legislature intended."

Applying these rules to the statute under consideration, what is its true construction? what power did the legislature intend to

grant to railroad corporations to take and hold lands as for public uses? The only grant of power to take and hold lands without the consent of the owner is contained in section two, which is as follows: "a railroad corporation, for the location, construction and convenient use of its road, for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses, may purchase or take and hold, as for public uses, land and all materials in and upon it; but the land so taken shall not exceed four rods in width for the main track of the road, unless necessary for excavation, embankment or materials; but shall not take, without consent of the owners, meeting-houses, dwelling-houses, or public or private burying grounds." There appears to be no doubt as to the meaning of this section. The purposes for which the corporation may take and hold lands, for the "location, construction and convenient use of its road," are specifically enumerated. They are "for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses." "The land so taken shall not exceed four rods in width for the main track of the road, unless necessary for excavation, embankment or materials." The only limitation to the power to take for side tracks and the buildings specified, is what is necessary for those purposes for the convenient use of the road. If this section stood alone the railroad corporation would have the right to determine the necessity and extent of the land to be taken for those purposes.

But the legislature was not willing to grant to railroad corporations this great right of eminent domain to be exercised at their discretion, but carefully guarded it by providing in section three, that, "if the parties do not agree as to the necessity and extent of the real estate to be taken for said side tracks and buildings, the corporation may make written application to the railroad commissioners, describing the estate, and naming the persons interested; the commissioners shall thereupon appoint a time for the hearing near the premises, require notice to be given to the persons interested as they direct, fourteen days at least before said time; and shall then view the premises, hear the parties, and determine how much, if any, of such real estate is necessary for the reasonable accommodation of the traffic and appropriate business of the cor-

poration.  If they find that any of it is so necessary they shall furnish the corporation with a certificate containing a definite description thereof, and when it is filed with the clerk of the court in the county where the land lies, it shall be deemed and treated as taken."

What power did the legislature by this section intend to give to the railroad commissioners?  Is it, as is contended by the respondent, the power to determine how much of the land, described in the application to them, "is necessary for the reasonable accommodation of the traffic and appropriate business of the corporation" for any use to which it may wish to put it? or is it the power to determine how much of it, if any, is necessary for the purpose for which the corporation claims to take it, and about which the parties have disagreed, "for the reasonable accommodation of the traffic and appropriate business of the corporation."

In construing this section, that part of it, giving the commissioners the power to determine, must be considered in connection with the first part, giving the corporation the right to apply to them, which limits the right to cases of disagreement of the parties "as to the necessity and extent of the real estate to be taken for said side tracks and buildings." Under this clause the commissioners get jurisdiction, and it is limited to the cases of disagreement between the parties which are specified.  The power to determine cannot exceed the jurisdiction granted, nor can it exceed the right granted the corporation to take lands.  If the commissioners have the general power claimed for them, then they may determine that the real estate which the corporation claims to take is necessary for main track, excavation, embankment or materials, when the corporation has no right to apply to them for that purpose ; or that it is necessary for car or locomotive works, or for the purpose of taking fuel, when the legislature has not given the corporation the power to take lands for such purposes.

We think it clear that the statute gives the railroad commissioners jurisdiction only in cases of disagreement between the parties as to the necessity and extent of the real estate to be taken for side tracks, depots, wood sheds, repair shops and car, engine and freight houses ; and that they have the power only to determine

the necessity and extent of the real estate to be taken for those purposes, having in view the reasonable ·accommodation of the traffic and appropriate business of the corporation.

If there is any doubt about the construction of this statute the history of the legislation in this state upon this subject supports the construction which we give it.

The first general statute concerning ·railroads was passed in 1836. Its provisions in regard to the right of the corporation to take lands were incorporated into the revised statutes of 1841, c. 81, § 2. "Any railroad corporation may take and hold, under the provisions contained in this chapter, so much real estate as may be necessary for the location, construction and convenient use of their road. Such corporation may also take, remove or use for the construction of such road and its appurtenances, any earth, gravel, stone, timber, or other materials, on or from the land so taken, provided that the land so taken, otherwise than by consent of the owners, shall not exceed four rods in width; unless when greater width is necessary for excavation or. embankment or procuring stone, gravel or other materials. These provisions were substantially incorporated into the revised statutes of 1857, c. 51, § 2. Thus the statute limiting the right of the corporation to take lands, without the consent of the owner, for all purposes except for excavation, embankment or materials, to four rods in width, remained till 1865.

But the large increase of the business of the roads had demonstrated that, in order to accommodate the public traffic and business over the roads, it was necessary to locate and erect new depots and enlarge old ones; and to enable the corporation to do so, it was necessary that it should have lands more than four rods in width. To obtain it, the corporation must submit.to the unreasonable and exorbitant remuneration which the owner, taking advantage of its necessities, might exact. If the price demanded should be so unreasonable that the corporation would not submit, the public would be deprived of reasonable accommodation for their traffic and business over the road. To obviate this difficulty the act of 1865, c. 321, was passed.

By section one, "a railroad corporation may take and hold real

estate necessary for depot purposes, and when the parties interested do not consent thereto and cannot agree upon other persons to determine the question of necessity and the extent thereof, the said corporation may make application to the railroad commissioners of this state, to view the premises, and determine whether, and how much of, such estate is necessary for the reasonable accommodation of the traffic and appropriate business of said corporation. By section three, "if said commissioners shall adjudge and determine, after such hearing, that the estate in question is necessary for the use of the corporation as aforesaid, they shall furnish to said corporation a certificate of their adjudication," &c.

Here we find used for the first time, the precise terms, contained in the present statute, which are relied upon as giving to the railroad commissioners the general power claimed by the respondent. But railroad corporations did not claim, and the legislature did not understand, that this act gave the railroad commissioners the power to condemn land for any other than depot purposes; hence, when it was shown that it was necessary that these corporations should have the right to take land of more than four rods in width for other purposes, the legislature, by act of 1868, c. 171, amended section one, of the act of 1865 so as to give a railroad corporation the right to "take and hold real estate for depot purposes, and for all necessary tracks or side tracks, wood sheds, repair shops and car, engine and freight houses, and when the parties interested do not consent thereto," &c. If the act of 1865 gave the general power claimed, then there was no occasion for the amendment.

The provisions of these statutes were incorporated into the revision of 1871; and still the legislature acting upon the construction we have given to that statute, that a railroad corporation had the power to take and hold, *in invitum,* real estate only for the particular uses specified in the statute, by act of 1872, c. 70, granted to such corporation the right to "take and hold, as for public uses, land and the materials thereon; for borrow or gravel pits, for the construction and repair of its road, in the manner and under the restrictions provided in c. 51, §§ 2 and 3 of the revised statutes." If section three gives the general power claimed,

there certainly was no occasion for this act.    Carefully consider-
ing all the provisions of the statute and the history of the legisla-
tion on this subject, we feel  clear  that the construction which we
have adopted expresses the intention of the legislature.

The next question that is presented is, had the railroad commis-
sioners jurisdiction to act on the petition presented to them by the
Bucksport & Bangor railroad  company by virtue  of  which  they
acted in condemning the land of  the  petitioner ?    The  railroad
commissioners are a tribunal created  by  statute,  and their juris-
diction is given by statute.    The petition presented to them is the
foundation for their action.    They  obtain  jurisdiction only when
the petition presents a case within the  provisions  of  the  statute.
*Scarborough* v. *County Commissioners*, 41 Maine, 604.    *Good-
win* v. *County . Commissioners*, 60  Maine, 328.    *Fairfield* v.
*County Commissioners, post.*

The petition in this case does not present a case within the pro-
visions of the statute.    To give the commissioners jurisdiction, the
petition should contain a description of  the  estate which the cor-
poration claims. to take, naming the  persons  interested in it, with
averments that the corporation claims  to take  it for some one  or
more of the purposes specified  in the statute and  that the parties
do not agree as to the necessity and extent of the estate, described,
to be taken for the purpose or purposes named.

The petition does not contain these  averments, neither in form
nor substance.    It starts out with  the  allegation  "that said cor-
poration and  Frederic  Spofford of  Bucksport in the  county  of
Hancock do  not agree as to  the  necessity and extent of the real
estate to be taken for side  tracks  and  buildings  for  said road."
This clause contains the only allegations of a claim by the corpora-
tion to take real estate, of the purpose for which it claims to take
it, and of  disagreement as to  the  necessity and extent of the real
estate to be taken.    It does  not appear what estate the corpora-
tion claims to take, nor does it appear that it claims  to take any
estate for one or more of  the  purposes  named  in the statute, and
that the parties disagree as to the necessity and extent of the estate
to be taken for such purpose.    The allegation is that they "do not
.agree as to the necessity and extent of  the real estate *to* be taken

for side tracks and buildings for said road." What buildings? There is no building specified. It does not appear that the corporation claims to take it for any building named in the statute. The disagreement is alleged to be as to the necessity and extent of the estate to be taken for buildings, for said road. It may have been for a barn, store, dwelling house, foundery for making their castings, or car and locomotive works.

This allegation in regard to the disagreement between the parties is followed by this request: "and in order to determine the same, said railroad company request you, as provided in § 3, c. 51, of the revised statutes, to examine and determine how much, if any, of the real estate of Frederic Spofford, who is alone interested therein, hereinafter described, is necessary for the reasonable accommodation of the traffic and appropriate business of the corporation." Then follows a description of two parcels of real estate. But there is no allegation that the corporation claims to take the estate described for any of the purposes specified in the statute, or that the parties disagree as to the necessity and extent of the real estate described to be taken for any of the purposes named in the statute. Taking all the allegations in the petition together, they do not present such a case as to give the railroad commissioners jurisdiction under the statute.

If, however, the petition to the commissioners was sufficient to give them jurisdiction, they exceeded it in their adjudication which is as follows: "and we do now, after such hearing and view of the premises, adjudge and determine that so much of said real estate, as is hereinafter by us first described, is necessary for the use of said Bucksport & Bangor railroad company, for necessary tracks, side tracks, depots, wood sheds, repair shops and car, engine and freight houses, and for the reasonable accommodation of the traffic and appropriate business of said corporation." They adjudge the estate described necessary for tracks.

Now the statute gives to the corporation no authority to apply to the commissioners in case of disagreement as to the necessity and extent of the real estate to be taken for main tracks, or tracks as distinguished from side tracks, and gives to the commissioners no jurisdiction to adjudicate upon this subject. And while the

statute expressly limits the corporation in its right to take land for its main track to four rods in width, except when necessary for excavation, embankment or material, if it can apply to the railroad commissioners to condemn lands generally for this purpose, the statute limitation, as to width, would be of no effect. This part of the adjudication of the commissioners is clearly without authority.

They also, after adjudging the estate described necessary for the use of the corporation for necessary tracks, side tracks, and the buildings named, add, "and for the reasonable accommodation of the traffic and appropriate business of the corporation." Here we find an express adjudication that the estate is necessary for the general uses of the corporation in addition to the specific uses named. We have already seen that under the statute the corporation has no power to take and hold land *in invitum* for general uses, that its power thus to take and hold lands is limited to the particular uses specified in section two. In this part of their adjudication, the commissioners exceeded their authority, and, as it is impossible to ascertain how much of the real estate described was adjudged necessary for tracks and the general uses of the corporation, the excess of authority in these respects invalidates the whole adjudication of the commissioners on this part of the case.

We come now to the proceedings in regard to taking the gravel pit. By Act of 1872, c. 70, "any railroad corporation may purchase, or take and hold, as for public uses, land and the materials thereon; for borrow or gravel pits, for the construction and repair of its road, in the manner and under the restrictions provided in chapter fifty one, sections two and three, of the revised statutes." To take and hold land under this Act the same proceedings must be had that are required to take and hold land for side tracks, &c. The objection made to the petition in this respect is that the description of the land to be taken is not sufficient. The description is as follows: "a certain gravel pit owned by said Frederic Spofford, and situated easterly of and adjoining their railroad track near where it crosses the county road near Smelt brook, so called, in Bucksport village, and northerly of said county road, and comprised within a space or limit of fifteen rods square." We think this description sufficient. It embraces a piece of land fifteen rods

square, bounded on one side by the east line of the railroad track and on another by the north line of the county road. The commissioners had no authority to condemn any of the petitioners land not embraced in the space or limit of fifteen rods square. By their description of the land taken it appears that they must have taken land not embraced in those limits. They begin "at a point upon the northerly line of the county road 103 feet (6 rods and 6 links) easterly upon said northerly line of county road from its intersection of the right-of-way of the Bucksport and Bangor railroad, thence at right angles to said county road upon a course N. 54 deg. E., magnetic, a distance of 165 feet (10 rods) thence, by a course bearing N. 30 sec. W. a distance of 372 feet (22 rods 13½ links), to a point upon the easterly line of the aforesaid right-of-way, thence, by the easterly line of right-of-way, to the first mentioned point." Now the longest straight line that can possibly be run on a piece of land fifteen rods square is only 21.213 rods in length; and a glance at the commissioners line, which commences in one side of the square and runs at right angles to it 10 rods, and thence by a change in its course of 54 deg. and 30 sec. 22 rods and 13½ links further, shows that they disregarded the description in the petition and took land not embraced in it. Therefore, their adjudication was unauthorized.

It is contended by the respondent, that this petition should not be granted, for the reason that the petitioner has been guilty of such laches as to deprive him of this remedy. It is said that the proceedings before the commissioners were closed in December, 1873, and that the petitioner had full knowledge of all the proceedings, and still he stood by and saw the respondent enter upon the land and expend large sums of money in erecting buildings and making side tracks, without interposing any objection till the filing of this petition, March 10, 1875, and that to quash these proceedings now, would work ruinous or very mischievous consequences to the corporation. But we must determine the case as presented in the record.

It is true that the adjudication by the railroad commissioners was in December, 1873; but the case finds that the certificate of the commissioners was not filed in the office of the clerk of the

courts till October 13, 1874. The taking by the corporation dates from the time of filing the certificate in the office of the clerk of the courts. There is nothing in the case showing that the corporation had entered upon the land taken. It could not do so, except to make surveys, till the damages were estimated and paid or secured as provided in the statute. The case does not show that the damages have been estimated. If the railroad company had legally caused the damages to be estimated, and had paid or secured them, and entered upon the land and expended large sums of money with the knowledge of the petitioner, and wished to invoke the doctrine of estoppel by reason of the laches of the petitioner, it should have set out the facts in an answer, and proved them. As the case is presented, there is nothing showing such laches on the part of the petitioner as to deprive him of this remedy.

Again, it is said that this petition is addressed to the discretion of the court; and the court, in the exercise of its discretion, is asked to dismiss the petition, though fatal defects may appear upon the face of the proceedings. True, the petition is addressed to the discretion of the court; but that discretion is a judicial discretion, to be exercised in accordance with the established rules of law; and, it appearing in this case that a substantial wrong has been done to the petitioner, that his estate has been taken without a compliance with the requirements of law, it is the manifest duty of the court to declare it, and to set aside the proceedings by which the wrong has been done.

*Writ of certiorari to issue as prayed for.*

APPLETON, C. J., DICKERSON, DANFORTH and VIRGIN, JJ., concurred.